# FOR PUBLICATION

FILED & ENTERED

FEB 18 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY beauchamDEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Chin Kun An<br><br><br><br><br><br>Debtor(s). | Case No.: 2:11-bk-46346-BB<br><br>CHAPTER 7<br><br>**MEMORANDUM DECISION DENYING MOTION OF CREDITOR PAULA BOYD FOR RELIEF FROM DISCHARGE INJUNCTION TO PROSECUTE ACTION IN NONBANKRUPTCY COURT**<br><br>Date:   February 11, 2015<br>Time:   10:00 AM<br>Courtroom: 1475 |

On November 14, 2014, creditor Paula Boyd ("Creditor") moved for relief from the automatic stay in the above chapter 7 bankruptcy case (the "Case") to prosecute a cross-complaint for intentional misrepresentation and fraud against debtor Chin Kun An ("Debtor") in the Los Angeles Superior Court, case no. BC 362165 (the "State Court Action"). For the reasons set forth below, the Court finds that the claims that the Creditor seeks to litigate against Debtor in the State Court Action (the "Claims") are barred by the discharge that Debtor received in the Case on December 7, 2011. Accordingly, there is no "cause" to grant relief from the automatic stay (or, more accurately, the discharge injunction) to permit the Creditor to litigate the Claims in state

-1-

court, and Creditor's motion for such relief must be denied. An order to this effect will be entered concurrently herewith.[1]

# I

# PROCEDURAL HISTORY

Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 25, 2011, commencing the Case. At the time the Case was commenced, Debtor had already been sued by creditors Darryl Boyd and Paula Boyd (jointly, "Creditors") in the State Court Action [Creditor's Opposition to Debtor's Motion for Sanctions, Docket No. 32, p. 2, par. 7], yet no reference to Creditors appears on Debtor's schedules, his statement of financial affairs or the master mailing list filed on the petition date. [Docket No. 1.] As a result, Creditors did not receive notice of the commencement of the Case in time to file by the original deadline of December 5, 2011, an action under section 523 to have the Claims excepted from discharge in the Case. Debtor received a chapter 7 discharge on December 7, 2011 [Docket No. 15], and the Case was closed on December 27, 2011 [Docket No. 17].

Creditors received notice of the pendency of the Case not later than October 15, 2012 (when Debtor filed a notice of bankruptcy stay in the State Court Action [Creditor's Opposition to Debtor's Motion for Sanctions, Docket No. 32, p. 3, par. 16 & Exhibit C thereto]),[2] but nevertheless proceeded with the State Court Action without filing anything in bankruptcy court or seeking relief of any kind in the Case on the theory that the Claims had been excepted from discharge under section 523(a)(3)(B).[3] As trial of the State Court Action approached and Debtor was unable to persuade Creditors that the Claims were barred by his bankruptcy discharge, Debtor obtained an order reopening the Case on August 25, 2014 [See Docket Nos. 18, 19, 20 and 21] and filed a motion for

---

[1] A separate order dismissing as untimely Creditor's adversary proceeding under section 523 [adversary case no. 2:14-ap-01754] will be entered concurrently herewith on the docket in the adversary proceeding.

[2] Apparently, Debtor filed an earlier notice of bankruptcy stay in the State Court Action, but the Court agrees with the Creditors that that notice was ineffective, as the notice was filed before a bankruptcy case had been commenced.

[3] Bankruptcy Code section 523(a)(3)(C) provides that a chapter 7 discharge does not discharge a debt of the kind specified in sections 523(a)(2),(4) or (6) that was neither listed nor scheduled unless the creditor had notice or actual knowledge of the bankruptcy case in time to file a timely nondischargeability action.

-2-

sanctions against Creditors for violation of his discharge injunction (the "Sanctions Motion").

The Court issued an order resolving the Sanctions Motion on September 17, 2014 [docket no. 38] (the "September 17 Order"). No one appealed the September 17 Order, and it became final on October 1, 2014. In resolving the Sanctions Motion, the Court reasoned as follows:

> Although creditors were omitted from the debtor's original bankruptcy filing, they acknowledge having received notice of the pendency of this bankruptcy case when a notice of stay was filed in the state court case on October 15, 2012. See paragraph 16 and Exhibit C of opposition. While it is true that this did not give them notice of the bankruptcy filing in time to commence a timely nondischargeability action, creditors' debt is not automatically excepted from the discharge. Creditors bear the burden of establishing that the action is one of the kind set forth in Bankruptcy Code sections 523(a)(2), (4) or (6). See Jones v. Warren Construction (In re Jones), 296 B.R. 447 (Bankr. M.D. Tenn. 2003). Although the automatic stay terminates as of the grant or denial of discharge, once a discharge is granted, a discharge injunction arises.
>
> Unfortunately, however, as the creditor has never brought an action seeking a declaration that their claims are excepted from discharge under section 523(a)(3), the Court cannot yet determine whether these claims have been discharged. Although Courts have held that state courts have concurrent jurisdiction over actions under section 523(a)(3), where, as here, the issue is not whether the creditors had actual notice in time to file a timely action (they did not), but, rather, whether the action is one of the kind set forth in section 523(a)(2), (4) or (6), the matter is within the exclusive jurisdiction of the bankruptcy court. See In re Bowen, 102 B.R. 752 (Bankr. 9th Cir. 1989).
>
> Therefore, as a practical matter, the action should be treated as barred by the discharge injunction unless and until the bankruptcy court holds otherwise, and further prosecution of the action as against the debtors in state court is should be treated as barred by this injunction. However, in light of the confused state of the law as to the appropriate procedures for obtaining a determination under section 523(a)(3) and the fact that some of the claims that the creditors seek to assert here may be of the kind that can be excepted from discharge under section 523(a)(2), (a)(4) or (a)(6), the Court will not impose sanctions for violation of the discharge injunction.

Based upon this reasoning, the September 17 Order prohibited continued prosecution of the State Court Action absent further order of the bankruptcy court and

imposed a deadline of 60 days from the entry of the September 17 Order for the Creditors to file an action in bankruptcy court seeking to have the Claims excepted from discharge under Bankruptcy Code §§ 523(a)(2)(4) and/or (6).[4] Paragraph 3 of the September 17 Order expressly provided that, "If no such action is brought before the Court within 60 days from entry of this Order, all such claims of Creditor against Debtor shall be discharged."

The 60th day after entry of the September 17 Order was Sunday, November 16, 2014. Therefore, pursuant to Federal Rule of Bankruptcy Procedure 9006(a)(1)(C), Creditors had until Monday, November 17, 2014, to commence an adversary proceeding against Debtor under Bankruptcy Code §§ 523(a)(2)(4) and/or (6).

The Court takes judicial notice of the fact that Creditors filed electronically in the underlying bankruptcy case on November 17, 2014 a pleading that appears on the main case docket as, "Third-Party Complaint by Paula Louise Boyd against Chin Kun An *Complaint for Damages and to Determine Non-Dischargeability of debt* (Johnson, Julius) (Entered: 11/17/2014) [Docket No. 40]," but did not commence an adversary proceeding that day.[5] The Court's records and files reflect that no filing fee was paid, no adversary number was assigned and no adversary docket was created until the following day, November 18, 2014. These facts are not in dispute.

Four days earlier, on November 14, 2014, Creditors brought a motion for relief from the automatic stay (which should more accurately be characterized as a motion for relief from the discharge injunction), seeking leave to prosecute the Claims in the State Court Action (the "Stay Relief Motion"). The Court conducted a hearing on the Stay Relief Motion on December 9, 2014 and continued that hearing to February 11, 2014 so

---

[4] The September 17 Order also preserved any right that the Debtor would otherwise have had to argue that Creditors should be barred by the doctrine of laches from pursuing the Claims.

[5] Docket entry no. 41, which appears immediately after the November 17 filing explains, "Notice to Filer of Error and/or Deficient Document **Event Code was incorrectly selected for filings requiring no filing fee, however, the document filed indicates that a filing fee is due. THE FILER IS INSTRUCTED TO RE-FILE THE DOCUMENT USING THE CORRECT FEE EVENT CODE, ATTORNEY MUST OPEN AN ADVERSARY PROCEEDING AND PAY THE APPROPRIATE FILING FEE; THE CORRECT EVENT CODE AFTER OPENING IS COMPLAINT;** (RE: related document(s) 40 Third-Party Complaint filed by 3rd Party Plaintiff Paula Louise Boyd, Creditor Paula Louise Boyd) (Wesley, Wendy Ann) (Entered: 11/18/2014)."

-4-

1  that Creditors could present testimony at the continued hearing from someone with
2  personal knowledge of the steps taken by Creditors in an effort to commence an
3  adversary proceeding on November 17, 2014.
4        Danielle Crozier, an employee of counsel for Creditors, testified under oath at the
5  continued hearing on February 11, 2014 that she took what she believed to be the steps
6  necessary to commence an adversary proceeding on the evening of November 17,
7  2014, but was aware that she had not succeeded in commencing an action because
8  CM/ECF never asked her for a filing fee and never gave her an adversary proceeding
9  number.  She testified further that, at approximately 6:30 p.m. on November 17, 2014,
10 she conferred with her boss, Creditors' attorney Julius Johnson, and alerted him to the
11 problem.  He agreed to take the complaint (together with exhibits that were too
12 voluminous to be filed electronically without being broken into sections) to court to file it
13 in person the following day, and neither she nor Mr. Johnson made any further efforts to
14 commence the adversary proceeding on the evening of November 17, 2014.

## II

## DISCUSSION

### A. November 17, 2014 was the Deadline for Commencing the Action

18       Federal Rule of Bankruptcy Procedure 4007(c) provides that a complaint to
19 determine the dischargeability of a debt under section 523(c) must be filed not later than
20 60 days after the first date set for the meeting of creditors under section 341(a).  This
21 deadline may be extended for cause, but only if the motion seeking such an extension
22 is brought before the expiration of this 60-day period.  Fed. R. Bankr. Proc. 4007(c).
23       Federal Rule of Bankruptcy Procedure 9006(b)(3) authorizes the court to enlarge
24 this 60-day period, but only to the extent and under the conditions stated in rule 4007(c).
25 As the Ninth Circuit explained in Anwar v. Johnson, 720 F.3d 1183 (9th Cir. 2013), this
26 makes the deadline to file a nondischargeability action different from, and more strict
27 than, many or most other deadlines set by the bankruptcy rules, which may be extended
28 at any time upon a showing of good cause or excusable neglect.  Even a showing of

excusable neglect does not authorize the bankruptcy court to treat as timely an otherwise untimely-filed nondischargeability action. The bankruptcy court lacks that equitable power. Anwar, 720 F.3d at 1187.[6]

Sections 523(a)(3)(B) and 523(c) excuse creditors who do not receive notice of the pendency of the bankruptcy case in time to file a timely nondischargeability action from the 60-day deadline imposed by Rule 4007(c), if they hold claims of the kind referenced in sections 523(a)(2), (4) or (6). But when must an action by such a creditor (an "Omitted Creditor") be commenced? Must it be brought within a reasonable period after the Omitted Creditor learns of the pendency of the bankruptcy case? Must dischargeability be litigated in a bankruptcy forum, or may an Omitted Creditor obtain a determination as to the applicability of sections 523(a)(2), (4) and (6) from a nonbankruptcy court? The Federal Rules of Bankruptcy Procedure do not answer these questions, and there is significant confusion and conflict in the caselaw as to the ability of an Omitted Creditor to litigate dischargeability issues in a nonbankruptcy forum.

It was for this reason that the bankruptcy court refused to impose sanctions on the Creditors for violating the discharge injunction by continuing to litigate the Claims in the State Court Action and resolved any doubts or disputes as to the applicable procedures by entering the September 17 Order. Only by creating an unambiguous deadline could the Court ensure that the parties' dispute concerning the dischargeability of the Claims – which had persisted for years -- would be resolved once and for all. The September 17 Order created such a deadline, and that deadline became final and binding when neither party appealed the September 17 Order in a timely manner.

Now that the Court has imposed a 60-day deadline for the Creditors to file a nondischargeability action, they are in a position comparable to that of creditors who received adequate notice of the original deadline for the commencement of

---

[6] The Ninth Circuit in Anwar, expressly reserves the issue of whether a showing of "unique and exceptional circumstances" such as the loss of the court's own electronic filing capacity or the court's affirmatively misleading a party as to the applicable deadline would even suffice to warrant a retroactive extension of the filing deadline. 720 F.2d 1188, fn. 6.

nondischargeability actions, and all of the same policy considerations apply. Thus, it is appropriate for this newly-imposed deadline to be applied with the same degree of formality and strictness as a deadline imposed by Rule 4007(c). Such an approach is particularly apt where, as here, Creditors have known of the pendency of the Case for *more than two years* and were advised both orally at the hearing on the Sanctions Motion and in writing by the express language of the September 17 Order that their Claims would be barred if they failed to commence an action under section 523 on or before November 17, 2014. Thus, the Court was not inclined to entertain argument from the Creditors on the issue of excusable neglect at the hearings on the Stay Relief Motion, as a Court may not rely upon excusable neglect to extend retroactively a deadline for the filing of a nondischargeability action under Rule 4007(c).

Nevertheless, having reviewed the memoranda and declarations filed in support of Creditors' contention that their failure to commence a 523 action by November 17, 2014 should be forgiven as it was due to excusable neglect, the Court finds, in the alternative, that, if it would be appropriate on these facts for the Court to extend its November 17 deadline retroactively upon a showing of excusable neglect, Creditors have failed to establish the requisite excusable neglect. Creditors were well aware of the applicable deadline. They were able to file the Stay Relief Motion three days before the November 17 deadline, but, inexplicably, waited until late in the day on November 17 to attempt to commence a nondischargeability action. Creditors' counsel was aware several hours before midnight on the evening of November 17, 2014 that he had not successfully opened an adversary proceeding, yet, rather than continue his efforts to cause the action to be opened that evening, he decided to wait until the next day to commence the action. This does not constitute excusable neglect. He could have taken the steps necessary to commence the action on the evening of November 17 (if not well before that), but elected not to do so.[7]

---

[7] The Court takes judicial notice of the fact that there is an online training module available 24 hours a day, seven days a week, on the Court's website that provides step-by-step instructions on how to open a new adversary proceeding using the Court's electronic filing system. Ms. Crozier's testimony identified another obstacle that

7

### B. Creditors Failed to Commence the Action by November 17, 2014.

Creditors have argued that they met the November 17, 2014 deadline by filing a complaint electronically on the docket in the main case on that day. The Court rejects this argument. The deadline established was for the Creditors to *commence an adversary proceeding*, not merely for them to file a document that bore the title, "complaint." The record unambiguously reflects, and the Creditors do not dispute, that they did not pay the required filing fee, that no adversary number was assigned and that no adversary proceeding was opened until November 18, 2014. Thus, they did not commence an adversary proceeding by the required deadline.

The bankruptcy court for the Northern District of Illinois in In re Smolen, 48 B.R. 633 (Bankr. N.D. Ill. 1985), examined a similar case long before the advent of electronic filing. In that case, the Court held that a creditor had failed to file a timely nondischargeability action when he mailed his complaint to the court and obtained a file-stamped copy showing that the complaint had been filed by the applicable deadline, but had not paid the required adversary filing fee and had not arranged for the issuance of a summons. Because the action had not been commenced in a timely manner and the Court lacked authority to extend the applicable deadline retroactively, the Court denied the creditor's motion for leave to file a belated complaint.

The result is no different in the age of electronic filing. In Anwar, supra, the bankruptcy court dismissed a creditor's nondischargeability complaints as untimely because he had not opened his adversary proceedings and filed the required complaints until shortly after midnight on the last possible day for the filing. The District Court and the Ninth Circuit affirmed this result.

---

prevented her from commencing an action electronically in a timely manner – the document she was attempting to file was too lengthy to be uploaded as a single .pdf filed and would have had to have been broken into smaller pieces for filing. She explained that this would have been time-consuming, that it was already 6:30 p.m. and that she was already working over-time in an effort to accomplish the filing. Mr. Johnson's response was to tell her to stop trying to open the action – that he would take the document to court the following day to open the action. An attorney's reluctance, or that of his assistant, to work after 6:30 p.m. one evening in order to meet a court-imposed filing deadline does not constitute excusable neglect.

In explaining the reasoning behind this seemingly harsh result, the Circuit noted that, "A creditor seeking to electronically file a nondischargeability complaint must complete two steps: First, the creditor must open an 'adversary proceeding' in the bankruptcy court's electronic filing system. Second, the creditor must electronically file a nondischargeability complaint." Anwar, 720 F.3d at 1185. Although the attorney began his attempts to commence the action sometime after 9:00 p.m. on the last day for the filing of the complaints, due to "technical problems with counsel's computer," he did not successfully open the actions and file the complaints until after midnight that night. Reflecting on the strict nature of the deadline for commencing a 523 action, the Circuit in Anwar observed that "the fact that Anwar missed the filing deadline by less than an hour is immaterial." 720 F.2d at 1188. The Circuit also identified the lack of prejudice to the debtor and the fact that the creditor sought to file a fraud complaint as irrelevant to the analysis. Id. Finally, the Court noted that, "the fact that Anwar's untimely filing stemmed from difficulty with an electronic filing system is immaterial. " Id. The instant case is remarkably similar. In short, the Court set a firm deadline of November 17, 2014 for the commencement of a 523 action. Creditors did not file their action until November 18, 2014. Therefore, the action was untimely.

## III

## CONCLUSION

Whether or not the Court has authority to extend its November 17 deadline upon a showing of excusable neglect, this is not an appropriate case for such an extension. The Creditors were well aware of the applicable deadline for the commencement of a nondischargeability action and had ample time to commence such an action. Counsel for the Creditors waited until a few hours before the deadline to attempt to commence the action and then could not figure out how to open a new adversary proceeding using the Court's electronic filing system. Counsel was aware that no action had been commenced and, rather than take any steps to try to correct the

9

problem that evening, he instead elected to commence the action the following morning. See supra, note 7. It is hard to characterize this scenario as excusable neglect.

Therefore, as the Creditors did not commence a nondischargeability action by the deadline imposed by the September 17 Order, under paragraph 3 of that order, the Claims have been discharged. Accordingly, there is no reason for this Court to grant Creditors relief from the discharge injunction to permit them to prosecute the Claims in State Court. Thus, the Stay Relief Motion must be denied, and the Creditors' adversary proceeding must be dismissed. Separate orders to this effect will be entered concurrently herewith.

**IT IS SO ORDERED.**

###

Date: February 18, 2015

Sheri Bluebond
United States Bankruptcy Judge